IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ULTRAVIOLET DEVICES, INC., <br><br> Plaintiff, <br> v. <br><br> KEN KUBITZ, JOHN KONIECZKA, <br> and GREEN LADDER TECHNOLOGIES, <br> L.L.C., <br> Defendants. | Case No. 09-cv-5697 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ultraviolet Devices, Inc. ("UVDI") filed suit against Defendants Ken Kubitz ("Kubitz"), John Konieczka ("Konieczka") and Green Ladder Technologies ("Green Ladder"). On September 14, 2009, Plaintiffs moved for a temporary restraining order, a preliminary injunction and expedited discovery as to Count I of the Complaint, alleging actual or threatened misappropriation of UVDI's trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq*. The preliminary injunction is denied for the reasons set forth below.

## BACKGROUND

A federal court presented with a motion for a preliminary injunction may conduct an evidentiary hearing and make its determination on the basis of evidence presented at the hearing. *See* Fed.R.Civ.P. 65(a); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). This Court heard nearly eight hours of testimony from the parties. The Court's findings of fact are as follows:

In 1997, Ken Kubitz began Sparks Technology, Inc. ("Sparks"), a company which designed, developed and sold bonded carbon air filters and other filtration technology. (*See* Kubitz Aff. ¶ 2.) He sold Sparks to UVDI in 2006. (*See* Compl. ¶ 1.) The acquisition was governed by an Asset

Purchase Agreement, which contained a non-compete clause that expired on June 5, 2009. (*See* Kubitz Aff. ¶¶ 17, 19; Def. Ex. 3 § 14.1.) Kubitz's continued employment with UVDI was ensured by an Employment Continuation Agreement. (*See* Pl. Ex. 3.) After some organizational restructuring, Kubitz became Vice President and Chief Technology Officer for Sparks, working at a manufacturing facility in Batavia, Illinois. (*See* Compl. ¶ 1; Kubitz Aff. ¶¶ 8, 11.)

In 2008, certain of UVDI's customers began to complain that the bonded carbon air filters provided to them by UVDI were insufficient to meet their "challenges," that is, the filters failed to adequately filter out a given customer's targeted air pollutants or contaminants. (*See* Hr'g Trans. 11:01:44-11:03:10, Oct. 15, 2009.) (hereinafter "Hr'g Trans 1") Kubitz was therefore tasked with the development of a new and more effective bonded carbon air filter. (*See id.* 11:05:36-11:06:28.)

In order to develop this new product, Kubitz sought the assistance of John Konieczka, a chemical engineer. (*See* Kubitz Aff. ¶¶ 17, 19.) Konieczka offered his consulting services to UVDI under the name of JBK Consulting, which he had formed in 2004. (*See* Konieczka Aff. ¶¶ 3, 7.) Konieczka did not sign, and was not asked to sign, a non-disclosure agreement prior to beginning work on the project or at any time during the project. (*See id.* ¶ 11.) His work on the project took place in the Sparks manufacturing facility. (*See id.* ¶¶ 12, 13.) At the onset of the project, Konieczka provided UVDI with a project proposal that was marked "highly confidential." (*See* Def. Ex. 5; Hr'g Trans. 1 11:08:26-11:10:14.) In May and September of 2008, he gave two progress reports to UVDI executives and directors, neither of which was marked "confidential." (*See* Konieczka Aff. ¶ 16; Def. Exs. 6 and 7.)

Potential formulae for the new air filter line were tested at the Sparks facility in Batavia throughout the summer of 2008. (*See* Kubitz Aff. ¶¶ 21; 24-25.) The testing area was located within

2

a multi-tenant commercial space that was generally accessible without the use of security badges or codes. (*See id.* ¶ 21; Konieczka Aff. ¶¶ 12-13.) While Konieczka was primarily responsible for the initial testing, Kubitz took over the project at the end of 2008 and finalized the formula in preparation for commercialization. (*See* Kubitz Aff. ¶¶ 21; 28-29.) Commercial manufacture of the new filters also took place in the publicly-accessible area of the Batavia plant. (*See id.* ¶ 31.)

Konieczka then founded Green Ladder, in order to manufacture and sell a new industrial soap. (*See* Konieczka Aff. ¶¶ 18, 20.) Kubitz became an investor in Green Ladder in March 2009. (*See* Kubitz Aff. ¶ 34.) Kubitz resigned from UVDI in June 2009, and began working with Green Ladder in August 2009. (*See* Compl. ¶ 1; Kubitz Aff. ¶¶ 35; 37.) UVDI became concerned that its former executive and former contractor were engaged in new projects that would infringe its asserted trade secrets, and requested that Kubitz and Konieczka provide assurances to the contrary. (*See* Compl ¶ 2.) UVDI's concern primarily arose from two events. First, a UVDI supplier informed UVDI that Kubitz had inquired about air filter components similar to those used in UVDI's new air filter line. (*See id.* ¶ 21; Kubitz Aff. ¶ 41.). Second, Green Ladder hired Robert Tower, a former UVDI sales manager who had resigned shortly after Kubitz's resignation. (*See* Compl. ¶ 22; Def. Ex. 11 (email offer of employment from Konieczka to Robert Tower).)

UVDI now makes two trade secret claims, as well as breach of fiduciary duty claims that are irrelevant to this Motion for a preliminary injunction. The parties do not dispute that the basic process for making a bonded carbon air filter is the same across the industry, in that some physical binder is combined with some ratio of carbon powder or granule component and baked at some temperature for some length of time. UVDI asserts, however, that their particular manufacturing process in its totality, or its "recipe," for developing the new bonded carbon air filter is a trade secret.

(*See* Compl. ¶ 15; Hr'g Trans 13:57:02-13:57:36; *id.* 14:00:54-14:02:16 (Oct. 19, 2009).) (hereinafter, "Hr'g Trans 2") UVDI's second trade secret claim is that each particular ingredient in that recipe, that is, the materials used, the ratio of materials combined, and the baking time and temperature, represents a UVDI trade secret. (*See* Hr'g Trans. 1 14:33:48-14:47:06.) The Court must consider, therefore, whether UVDI is entitled to a preliminary injunction barring the Defendants from using any particular component of its process, or from using the process in its entirety, to manufacture their own line of bonded carbon air filters.

## STANDARD OF REVIEW

A preliminary injunction represents an extraordinary exercise of judicial power, one which the Seventh Circuit has warned is "never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984). Whether such a remedy is appropriate depends upon a two-step inquiry in which the court first analyzes whether a given circumstance meets the necessary threshold, and then balances the risks of harm to each of the parties. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America*, 549 F.3d 1079, 1085-86 (7th Cir. 2008).

To demonstrate an entitlement to a preliminary injunction as a threshold matter, a plaintiff must show that irreparable harm will be done if the preliminary injunction is denied, that the available remedies at law are inadequate, and that it has some chance of success on the merits of its case. *See id.* at 1086. In the balancing phase of the inquiry, the harm to the plaintiff if the injunction is denied is balanced against the harm to the defendant if it is granted. *See id.*

**DISCUSSION**

I. The Threshold Inquiry

    A. Irreparable Harm and Inadequacy of Remedy at Law

Illinois law presumes that irreparable harm will be done in the absence of injunctive relief if trade secrets are misappropriated. *See Jano Justice Systems, Inc. v. Burton*, 636 F. Supp. 2d 763 (C.D. Ill. 2009); *Computer Associates Intern. v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004). Although a party opposing preliminary injunction "may rebut this presumption by demonstrating that the [moving party] will not suffer any harm if the injunction is not granted," *Computer Associates Intern.,* 333 F. Supp. 2d at 700, the Defendants here have not made such a demonstration. Therefore, it is presumed that UVDI will suffer irreparable harm if its trade secrets are infringed and no remedy at law will suffice to prevent or repair this harm.

    B. Likelihood of Success on the Merits

The next stage of the threshold inquiry requires a determination of whether the plaintiff is likely to succeed on the merits of its claim. Here, the Court must determine whether UVDI has presented sufficient evidence that its new formula for the process of manufacturing bonded carbon air filters is entitled to protection under the Illinois Trade Secrets Act ("ITSA").

The ITSA defines a "trade secret" as "information . . . that is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use and is the subject of reasonable effects to maintain secrecy or confidentiality." 765 ILCS 1065/2(d). In determining whether a plaintiff has sufficiently proven the existence of a trade secret, Illinois courts have looked to the following factors: (I) the extent to which the information is known outside of the plaintiff's business; (ii) the extent to which it is

5

known by employees and others involved in the business; (iii) the extent of measures taken by the plaintiff to guard the secrecy of the information; (iv) the value of the information to the plaintiff and to its competitors; (v) the amount of effort or money expended by the plaintiff in developing the information; and (vi) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Strata Mkt., Inc. v. Murphy*, 740 N.E.2d 1166, 1176 (Ill.App.1st.Dist. 2000).

Under the ITSA, the party moving for a preliminary injunction is required to "prove both the existence of a trade secret and the misappropriation." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995). In the present case, it remains unclear whether UVDI is asserting that each ingredient in its new recipe for the production of bonded carbon air filters is a protectable trade secret or whether it claims only that the recipe as a whole is a trade secret. The Court therefore considers each component in turn, and then examines whether the whole of the production formula is greater or less than the sum of its parts.

### 1. The type of binder used in UVDI's new bonded carbon air filters.

UVDI's chief witness, company Vice President Lev Rotkop ("Rotkop"), testified that commercial use of polyethylene powder as a binder in a carbon filter is a trade secret. (Hr'g Trans. 1 15:14:18-:28.) However, it is well-known that polyethylene powders are useful binding agents in the production of bonded carbon air filters, and thus this fact is not claimable as a trade secret. *See* 765 ILCS 1065/2(d) (defining a trade secret as information that derives value "from not being generally known").

Kubitz testified that he made and sold a filter to a Sparks Technology customer in 1999 which used low density polyethylene as a binder. (Hr'g Trans. 1 16:32:16-:50.) Moreover, a cursory search of the United States Patent and Trademark Office Database reveals a number of patents that

treat use of polyethylene binder in bonded carbon air filters as a matter of common knowledge.[1] A decades-old patent for a "bonded activated carbon air filter" states that "[t]he preferred bonding agents are the thermoplastics, particularly polyethylene." U.S. Patent No. 3,721,072 (filed July 13, 1970). More recently, a 2004 patent for "bonded activated carbon structures and articles," explains that "[e]specially useful bonded [carbon] structures are produced utilizing . . . microfine polyethylene" powders. U.S. Patent No. 6,793,866 (filed Oct. 23, 2001) (issued Sept. 21, 2004).

Even if the use of polyethylene powder as a binding agent in the manufacture of bonded carbon air filters had at some point been someone's trade secret, "[p]ublication in a patent destroys the trade secret." *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706 (7th Cir. 2006). Thus, it cannot now be claimed to be UVDI's trade secret.

### 2. The ratio of carbon granules to Microthene binder used in UVDI's new air filters.

It is not clear whether UVDI claims that the ratio of carbon to binder is a trade secret. However, Defendants' counsel appeared to assume this at the hearing. Although UVDI has not publicly named the ratio, the new filters appear to have contained a mixture of about 20% binder and 80% carbon, or within a range of 17.5% to 23% binder. (*See* Def. Ex. 7 at 25 ("EVA 20% Mix"), 29 (listing a range of tested formulas)). Evidence produced by UVDI under seal reflects that the preferred ratio is 15% binder to 85% carbon, with significant variance around that ideal number. (*See* Pl. Ex. 14.)

Where a process is commonly known within an industry and the plaintiff in a trade secret case claims to have made significant improvements to the process, but not to have changed the

---

[1]The Court may take judicial notice of the contents of published patents which are matters of public record and not reasonably subject to dispute. *See* Fed. R. Evid. 201 (b) and (c).

process in a way "amounting to a meritorious discovery or invention," there is no trade secret protection. *Victor Chemical Works v. Iliff*, 299 Ill. 532, 547, 132 N.E. 806 (Ill. 1921). The 15% to 85% mixture could perhaps be claimed as a meritorious innovation on the popular method of manufacturing carbon air filters if it were far outside the range of standard practice. However, the patents cited above reveal that this ratio is "plus or minus" the norm. *See* U.S. Patent No. 5,033,465 (discussing carbon-and-binder mixtures of 82% to 18% and 80% to 20%); U.S. Patent No. 6,429,165 (filed Oct. 27, 1999) (describing the "presently preferred" formula as one where "polyethylene is added at 5 to 30%, preferably 7 to 20% of the mass" of carbon used).

UVDI is thus claiming that using a commonly accepted, and publicly known, ratio of carbon to binder represents a secret or novel improvement on the standard manufacturing process. The ratio therefore does not merit trade secret protection.

### 3. The mixing time of the carbon granules and Microthene binder.

Rotkop was asked during his testimony if "the mixing time for this application of making a bonded carbon filter using the Microthene and using this type of carbon" was claimed to be a trade secret, and he answered that it was. (Hr'g Trans. 1 14:37:30-:40). A sealed UVDI exhibit reveals that the preferred mixing time is four minutes. (*See* Pl. Ex. 14). It seems unlikely that a standard ratio of standard ingredients would need to be mixed, using standard equipment, for a unique and trade-secret-worthy period of time. UVDI has presented no concrete evidence to the contrary.

### 4. The temperature at which the filters are heated.

Rotkop testified that the new filters are baked at a temperature of "200 something degrees" (assumed to be Celsius, the standard scientific measurement), a vague characterization of the claimed trade secret to which defense counsel objected. (*See* Hr'g Trans. 1 14:43:24-14:45:04.) The analysis

here is similar to that for the mixture of carbon and binder. It is widely known within the industry that bonded carbon panels are baked at some temperature for some period of time. The operative legal question, if any, is whether UVDI's time and temperature are novel and protectable, or merely within industry standards. As with the ratio of binder to carbon, reference to publicly available patent information shows that bonded carbon air filters are usually baked at "plus or minus" 200 degrees Celsius. *See* U.S. Patent No. 5,033,465 (describing tests of binder-carbon mixtures at temperatures of 205 and 210 degrees Celsius); U.S. Patent No. 6,793,866 ("While the temperature will vary depending on the specific polymer being used, it will typically range from about 175 C to about 250 C."). Thus, a baking temperature of 200 degrees or so, in the context of the manufacture of bonded carbon air filters, is not a trade secret.

UVDI has very little chance of success on the merits of its claim that these four components of its manufacturing process, which are public knowledge and are the subject of various patents, merit trade secret protection. UVDI also argues, however, that it is not only the ingredients, but its air-filter recipe as a combination of each of these particular components, that represents a trade secret. This claim, if made with adequate specificity and particularity at the merits stage of this case, might rise to the level of a protectible trade secret, as "[a] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001); *compare H.L. Nickelson v. General Motors Corp.*, 361 F.2d 196, 199 (7th Cir. 1996) ("Trivial advances or differences in formulas or process operations are not protectible as trade secrets.").

Even if the Court were to find that UVDI's complete recipe is a trade secret, however, UVDI would still have little success of chance on the merits, because UVDI failed to act reasonably to protect its secrets. Trade secret protection is forfeited when the secret-holder fails "to take reasonable steps to prevent gratuitous disclosure." *BondPro, Inc.*, 463 F.3d at 708. If a plaintiff fails "to take minimum steps to protect [its] secrets before running to court," *see id.* at 708, the court may refuse to recognize the trade secret.

UVDI failed to protect its trade secrets. While Kubitz was subject to a confidentiality agreement, Konieczka was never asked to sign one, and UVDI made no effort to see that he signed one before giving him complete access to the Batavia facility. Even had he signed a confidentiality agreement, UVDI took no measures to prevent its secret process from being disclosed to any UVDI employee, or even a member of the public, who happened to be present. The testing process for the new air filters took place in a publicly-accessible space without enforcement of any security restrictions. Although UVDI argues that this was not its fault because Kubitz was the senior on-site executive at the testing location, UVDI did not take ultimate responsibility for ensuring that its alleged trade secrets were adequately protected. Because UVDI failed to take reasonable steps to protect the testing and manufacture of its new air filters from public scrutiny, it cannot now claim that the results of that testing and the manufacturing process are trade secrets.

UVDI has also failed to sufficiently prove that the Defendants are, or are about to, misappropriate its secrets. UVDI relies primarily upon an argument that such use is inevitable if Green Ladder decides to manufacture and market bonded carbon air filters. However, "the mere fact that a person assumed a similar position at a competitor does not, without more, make" misappropriation of trade secrets inevitable. *Pepsico, Inc.*, 54 F.3d at 1269. UVDI has not presented

the requisite additional evidence to prove that Defendants will necessarily make use of its particular process for the manufacture of bonded carbon air filters. Given Kubitz's extensive experience in the industry prior to the purchase of Sparks by UVDI and Konieckza's engineering background, it seems that the Defendants would be able to engineer and market their own filters without relying upon whatever secret knowledge they gained at UVDI.

The Court therefore finds that UVDI is not likely to succeed on the merits of its trade secrets claim. UVDI has failed to adequately identify its purported trade secrets and has failed to provide evidence distinguishing them from publicly-available information about standard procedures for producing bonded carbon air filters. Moreover, UVDI failed to take reasonable precautions to protect or secure the confidentiality of its testing or manufacturing process. Finally, UVDI failed to adequately prove that Defendants are currently misappropriating their trade secrets, or that they are about to do so. Since there is little-to-no likelihood of success on the merits, UVDI's Motion for a preliminary injunction fails the threshold test.

The analysis must continue, however, as the Seventh Circuit has "encouraged the [district] court to conduct at least a cursory examination of all" of the factors that must be considered in determining whether a preliminary injunction is merited, even where the request for injunctive relief does not cross the requisite threshold. *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1087.

**II. Balancing of Harms**

The Court must "weigh[] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id.* at 1086. In striking this balance, the Court considers the plaintiff's likelihood of ultimate success: "[T]he more likely it is the plaintiff will

11

succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). Here, because UVDI has little likelihood of success on the merits, it must show that the scale tilts heavily in its favor.

UVDI has not made such a showing. Although Defendants have contacted suppliers of the ingredients necessary to manufacture bonded carbon air filters, and have also contacted UVDI air filter customers, there is no evidence in the record that Green Ladder is currently manufacturing, or even threatening to manufacture, air filters using UVDI's "secret" process. Moreover, a preliminary injunction as broadly drawn as the one that UVDI seeks, barring Defendants from producing air filters using any of the information that they learned during the testing of UVDI's new air filters, would prevent Kubitz from practicing the trade that he has worked in for decades. This would represent a significant harm to Kubitz that is not outweighed by any proven harm that UVDI would suffer in the absence of a preliminary injunction.

UVDI's Motion for a Preliminary Injunction is denied.

_____
Virginia M. Kendall
United States District Judge
Northern District of Illinois

Date:
November 13, 2009